Reeve v. Beekman.

---

HENRIETTA REEVE et al.

*v.*

HENRY M. T. BEEKMAN, executor of Fanny Traphagen, deceased.

After giving his daughter Fanny $4,000 and also one-fourth of his residuary estate, a testator, by codicil, gave the interest on " the money given to her, and so much of the principal as she may need and her circumstances may require from time to time," with a gift of what might remain to her issue, or, in default of such issue, to the testator's grandchildren living at the time of her death. By a subsequent codicil he appointed her one of his executors. She received the $4,000 and also one-fourth of the residue from her co-executor, whom she survived, and held both sums until her death. She had no issue.—*Held*, that both sums were in her hands as trustee, and that as there was no proof of any " need " of her having any of the principal during her lifetime, the testator's surviving grandchildren were entitled thereto.

Reeve *v.* Beekman.

*Mr. Foster M. Voorhees,* for complainants.

*Mr. J. N. Voorhees* and *Messrs. Collins & Corbin,* for defendant.

BIRD, V. C.

David Trapnagen made his last will August 2d, 1836. One clause reads thus :

"I give to my daughter Fanny four thousand dollars to be paid to her in one year after my decease."

As to the residue he said :

"One-fourth part I give to my daughter Fanny."

He made his son David executor.

On February 1st, 1840, he made a codicil to his will in which he said :

"It is my will that so far as relates to the legacy in my said will given to my daughter Fanny, that my executors and the survivors of them pay to her the whole of the interest which may accrue on the money given to her, and so much of the principal as she may need and her circumstances may require from time to time, and whatever may remain at the time of her death to go to her issue, equally, and should she have no issue then I give the same equally to my grandchildren at the time of her death (that is, my grandchildren that may be living at the time of her death)."

By this codicil he appointed his brother Henry executor with his son David. He authorized his executors to make said payments to Fanny whether she should be married or not, and declared that her receipt should be a sufficient voucher. On May 20th, 1841, he revoked the appointment of his brother Henry as executor and appointed his daughter Fanny executrix. He died in 1842.

The will and codicils were proved. David and Fanny undertook the burden of the settlement of the estate. They had in hand the $4,000 legacy, the interest of which was so given to

Fanny, and so much of the principal as she might need or her circumstances require, and also $2,952.41, one-fourth of the residue. Fanny died in the year 1885, leaving a will in which the defendant is named as executor thereof.

The grandchildren of the testator, named in the codicil, claim these legacies at the hands of the executor of Fanny.

The executor of Fanny's will resists this claim. In plain words, the *first* contention is that both of these legacies were paid over to Fanny in her lifetime according to the directions of her father's will ; that she accepted them as her own private and separate estate, as she had a right to do, and that consequently the defendant, as the executor of her will, cannot be called to an account. Is it true, then, that Fanny received all these moneys according to the plain intent of the testator as expressed in the codicil ? She doubtless became possessed of both sums in full. After the death of her brother, who was co-executor, she had a right to the possession of the fund. But, as the case stands, did she hold these sums as executor or trustee, or did she hold them in her own right absolutely ? Her co-executor, in 1847, assigned to her bonds and mortgages of the estate of the value of $5,-300, in the receipt for which she acknowledged taking them—

"From my brother, David Traphagen, executor of my father, and to be allowed him on the legacy and money, in part payment, given me in and by the will of my said father."

David died in 1850, but after he and his sister had made what they regarded as a final settlement of their accounts in the orphans court. He left a last will and named Joseph Thompson executor. As such executor Judge Thompson had a settlement with Fanny Traphagen, September 30th, 1852, in which these words and figures are made :

"Fanny's legacy, bal. due, $2,011.83. April 1; 1853, inst. thereon, $120.71. Allowed her for commissions, $1,200."

For these sums she gave a receipt to the executor of David. Other receipts given by Fanny to her brother, as executor, are

produced, showing payments by him to her of moneys—one April 1st, 1848, for $275; one April 8th, 1850, for $583, and one September 26th, 1850, for $230. It does not appear on what account these last three sums were paid her.

It is plain that when David paid Fanny the $5,300, he regarded it as a payment on account of her legacies. It is also plain that when Judge Thompson, as executor of David, paid Fanny the $2,011.83 and $120.71 and the $1,200, he regarded the first two items as payments on account of her legacies.

And the question still comes up, Shall the court regard those payments made to her in her right as executor and trustee, or in her own individual right? If David intended to pass these moneys over to his sister as part of her own separate estate, in attempting it did he comply with the will and codicil under which he was acting? The very first glance at the will and codicil prompts the remark that the testator did not intend the legacy to be paid to Fanny in bulk; he did not intend that she should have the principal as an unqualified gift. It seems quite useless to make observations on this point, but the counsel for defendant pressed their views with great ability, insisting that the two acts—the one by David in paying the $5,300, and the one by Judge Thompson in making the other payments—were the exercise of legitimate powers under the will, and effectually transferred the money to Fanny's private estate. Is this the true view of the case? By his will the testator gave to Fanny $4,000, payable in one year after his death. Therefore, his first intention was that she should have the entire sum absolutely. But by the codicil he as distinctly says that his executors, or the survivor of them, shall pay to her the whole of the interest which may accrue on the money given her, and so much of the principal as she may require from time to time. He says the whole of the interest, but in express terms limits the payment of the principal to her needs or to the requirements of circumstances. This plain language cannot be disregarded. In considering the rights of these grandchildren, the court must take it into account. The testator had them in mind, and their claims cannot be overlooked.

But, to continue, the testator changed his mind from making

an absolute gift, to one depending on the legatee's necessities.
Payments were not to depend upon the will of the executor; of
this there is not the slightest intimation; for whatever might be
their will or wish, the prevailing condition was Fanny's necessities. But it nowhere appears that she was ever in the slightest
" need " of funds or of aid of any description. It nowhere appears that there ever arose any " circumstances," the most
remote, " requiring " the payment of any part of the principal.
Must not these things appear, when the intention of the testator
is so unmistakable, before the grandchildren can be cut off?   I
think so.

But, again, on whom is the burden ?   I think on the defendant. He stands in the place of Fanny. Fanny had these
moneys. With the facts as they are now presented, had a bill
been filed in Fanny's lifetime against her, requiring her to account
for these moneys as trustee, she doubtless would have been required so to do. I cannot imagine any condition which would
justify her in resting where the defendant has rested, saying, in
effect: "These moneys were all paid to me—one parcel, of $5,300,
by my co-executor, and two other parcels by the executor of my
deceased co-executor; and I accepted them as my own, under
the will of my father." I think that the court would have required her to show affirmatively that the principal sums had
been paid on the conditions named in the codicil, and that if
such conditions had not been satisfied by the proof, Fanny would
have been required to render an account of the principal, and to
invest it in such manner as to distinguish it and to preserve its
identity.

In the second place, it is urged that although these legacies
are given upon condition or with a qualification, the condition
is void, because the legatee has the absolute power of disposition
of the fund. In one of the briefs, it is said that if there was
any restraint imposed by the first codicil, it was removed by the
second, which clothed the same person with both the trust estate
and the beneficial interest, adding that the effect is the same as
if the testator had said: "I give my daughter Fanny $4,000;
she shall hold the same in trust, to use the interest and as much

of the principal as in her own judgment she needs or her circumstances require.   If on her death anything remains, it shall be paid to my grandchildren."   I would express it thus in effect: a gift to Fanny, as trustee, to be held by her in trust for herself and the grandchildren of the testator, she to have the interest and so much of the principal as she may need or her circumstances require for her own use absolutely.

It is maintained that this is an absolute gift of the entire fund.   *Kendall* v. *Kendall, 9 Stew. Eq. 91, 96,* is cited as sustaining this contention.   I think that a very different case from this.   The chancellor said: "Though by the terms of the bequest the property, which is consumable, is given to her for her natural life, there is also granted to her power to sell it, or any part of it, for her own benefit, if she shall see fit so to do. There is no gift over.   The authority to sell is evidence of the extent of the interest intended to be given, and is not a mere power.   She takes an absolute interest in the property, and not merely a life interest, with power of disposition during life." There was no gift over.   And the legatee was permitted to sell all or any part of it for her own use, as she might deem best. She was not limited by her necessities.   She came to the possession of the goods given as legatee and not as trustee.   She had a right to dispose of them as legatee and not as·trustee.   I think the case of *Dutch Church* v. *Smock, Sax. 148,* is as widely different from the one in hand.   The testator in.that case said:

"I also give to my wife the sum of six hundred dollars, to be at her disposal during her life."

I cannot see that this case is controlling.   The remarks above made apply to this case with equal force.   *Annin* v. *Vandoren, 1 McCart. 135,* is regarded as fully analogous to this.   But in that case the legacy was given to the legatees without any qualification respecting their necessities.   This clause followed the gift:

"Should my daughter Leah or Mary, or either of them, die leaving no legal issue, the share or shares herein bequeathed to her or them (if not paid over

by my executors, and if paid over, then such part thereof as remains unexpended) I give and bequeath unto my surviving children and their heirs, equally between them."

Here the testator undoubtedly placed the gift within the absolute control of the legatee, if the legatee once acquired possession, and to that extent the general rule applied ; but the question discussed and decided was whether the general rule also applied to the moneys which remained unexpended. The court held that it did. The learned chancellor expressed a desire to reach a different conclusion on this branch of the question, but was unable to do so. He observes : "The uncontrolled power of expenditure necessarily implies absolute ownership as fully as the power of disposing of it. And this difficulty can only be overcome by limiting the right of expenditure to so much as may be necessary for the support of the legatee." And so the very method of overcoming a well-settled rule of law, suggested by the court in the case of Annin's executor, we find adopted in the will of Traphagen. In my judgment, this case is not only not decisive, but really raises no doubts as to the one in hand. Nor is the present case within that of *Courter* v. *Howell, 6 Stew. Eq. 80.* In that case although, in the first instance, the gift of the $3,000 was for life, the testator expressly provided that if the legatee should elect it might be invested in a house and lot, and the conveyance made to her, which, of course, made it absolutely hers, she having so elected.

I conclude that Fanny took possession of these moneys as executrix or trustee, and that she held them as trustee. So far as appears, she exercised, and had no right to exercise any other power over them ; for the conditions under which she might exercise other rights over them are not proved. It seems to me that it would be a great departure from equitable rules to allow an executor in such case to appropriate an estate, or any part of it, to himself, because he chanced to be both legatee and executor. That these moneys were held in trust is shown by the views of Mr. Justice Depue in *Pratt* v. *Douglas, 11 Stew. Eq. 516, 534.* See, also, *Thorp* v. *Owen, 2 Hare 607–610,* which shows that the court has the power to enforce just such trusts as this. If Fanny

was in need of any part of these funds she might have used them at her own peril, but if in doubt as to the extent of the use, instead of acting as judge in the matter, she could have called on the court for directions, and, through a master, the extent of her necessities could have been ascertained. *Woods* v. *Woods, 1 Myl. & C. 401, 408, 409; Kilvington* v. *Gray, 10 Sim. 293, 296, 297.* This case shows the power of the court, and how to exercise it. *Raikes* v. *Ward, 1 Hare 445.*

The argument that a long period of time has elapsed, and that nothing appears amongst Fanny's papers to show that she held these moneys as trustee, and must, therefore, have held them in her own right, I think is unsound and dangerous. To protect a trustee from accounting because of the lapse of time, and because he has kept no accounts, or has seen fit to appropriate and claim all of the trust estate as his own, would be exceeding any liberality heretofore exercised by the courts towards that class. If such doctrine were to prevail, it would prove disastrous to all interests of *cestuis que trustent.*

I think that the codicil operates upon both legacies, the $4,000 as well as the residuum. The testator, in said codicil, speaks of the legacy and of the money given to Fanny. Now both are legacies, and both are money. If it should be thought that the testator meant only one of them, it would be impossible to say which. I have no doubt but that he meant both.

Fanny was never married, and consequently had no issue at the time of her death. In this event the codicil gives the legacies to certain of the testator's grandchildren, being the complainants. I conclude that they are clearly entitled to the $4,000 and the $2,952.41, with interest on both sums from the time of Fanny's death. The complainants are entitled to costs.