Strafford, }
June, 1899. }

| 69 | 577 |
| 72 | 350 |
| 69 | 577 |
| 74 | 345 |

### SHAPLEIGH v. SHAPLEIGH & a.

A bequest of "the proportion coming to me as heir" will be held to include an estate acquired by will, when such appears to have been the intention of the testator.

Evidence of an understanding between a testator and his heirs-at-law, as to the division of certain property disposed of by will, is not admissible to show a latent ambiguity in the description when it does not appear that the understanding was of such a character as to bind the testator to its performance.

Where a will provides that a devisee for life may dispose of all and every portion of the estate if necessary for her comfortable support and maintenance, or, if she desires to do so, may sell and convey any or all of the estate without license from the probate court, may manage the estate as if the devise were absolute, and may spend the income and principal if necessary for her comfort or if she so desires, the expressed wish of the testator being that she shall fully use, have, and enjoy the estate as if it were her own absolutely during her lifetime, the devisee may use the property as she desires, within the bounds of good faith, during the active enjoyment of the life estate.

BILL IN EQUITY, for the construction of a will. Facts agreed. Richard W. Shapleigh of Somersworth died May 24, 1897, aged thirty-five years and unmarried, leaving as next of kin his mother and a brother of the half blood, James H. Shapleigh. He left a will, which, besides bequeathing his watch and sundry sums of money, together amounting to $300, contains the following provisions:

"Sixth. I give and bequeath to Marion T. Shapleigh, widow of my deceased brother Fred R. Shapleigh, the proportion coming to me as heir of said Fred R. Shapleigh in his estate.

"Ninth. Subject to and upon the conditions hereinafter named, I give and bequeath to the trustees or to the corporation of Olivet College, Olivet, Michigan, the sum of one thousand dollars, for the purpose of founding a scholarship in said college, or to found a prize fund in the scientific department of said college, to correspond with the Hewitt Prize, and to be known as the Richard W. Shapleigh Fund, and for no other purpose whatsoever. This bequest is made subject to the following condition: If, in the judgment of my executrix hereinafter named, the condition of my estate will not warrant the giving of said bequest to said college, then the same shall be void.

"Tenth. All the rest, residue, and remainder of my estate, real, personal, and mixed, wherever found and however situate, I give, bequeath, and devise to my mother, Sarah A. Shapleigh, for and during her natural life, if she shall survive me, with the right and power to dispose of all and every portion thereof in her lifetime, if she shall find the same necessary to her comfortable support and maintenance, or shall desire so to do; hereby granting to the said Sarah A. Shapleigh the right to sell and convey, by absolute deed, any and all of my said estate, without license or orders from the probate court, and the right to manage the same as if this gift were entirely absolute, and the right to spend the whole income of the same and the principal, if she finds it necessary to do so for her comfort, or desires so to do. My will and wish being that she shall fully use, have, and enjoy said estate as if it were her own absolutely during her lifetime.

"Eleventh. All of my estate remaining at the decease of said Sarah A. Shapleigh, whether of principal or of accrued income, in whatever form the same may be, I give, bequeath, and devise to the said James H. Shapleigh, if he is then living, and to his heirs and assigns forever; and in case the said James H. Shapleigh shall not be living at the decease of the said Sarah A. Shapleigh, then I give and bequeath the same to the said Lizzie A. Shapleigh, her heirs and assigns forever."

He named his mother as executrix of the will, and directed that she should not be required to give a bond, file an inventory of the estate, or "account therefor to the probate court."

Richard resided with his mother at the time of his death and for several years prior thereto, and paid a portion of the household expenses. He had some knowedge of legal terms, having studied law for a short time. His mother was seventy-four years old and in good health. The portion of his estate that will pass by the tenth and eleventh clauses of the will amounts to about $18,000. Sarah has $5,000 that was bequeathed to her

by her late husband, and is also entitled to the income of some $4,000 or $5,000 more under his will.

Fred R. Shapleigh, also a resident of Somersworth, died April 1, 1894, leaving a widow, Marion T. Shapleigh, and no children. By his will, made prior to his marriage, he gave the residue of his estate after the payment of his debts, sundry legacies, etc., to his brother, said Richard, who was nominated and appointed executor of the will. His estate consisted of personal property of the value of $15,000 and real estate of the value of $1,400. One half of the personal estate left after the payment of debts has been paid and transferred to the widow. At some time before Richard's will was made, there was an understanding between him and James that the other half of Fred's personal estate should be equally divided between Sarah, Richard, and James.

Sarah, the executrix of Richard's will, is the plaintiff, and prays for a construction of the sixth and tenth clauses thereof. The defendants are James, Marion, and Lizzie, and are all the other parties interested in such construction.

*William F. Russell* and *John S. H. Frink*, for the plaintiff.

*Dwight Hall* and *Edwin G. Eastman*, for the defendants.

CHASE, J.   1. What, if anything, is Marion entitled to under the sixth clause of Richard's will?  Strictly speaking, there was nothing coming to Richard as an heir of Fred.  The only way in which he acquired a title or right to any portion of Fred's estate was by the latter's will.  He was a legatee and devisee of Fred. Being the executor of Fred's will, he must have known this fact. It cannot be doubted that he intended to give Marion something that was coming to him from her late husband's estate.  Neither of the parties to the action questions this fact.  He must, therefore, have used the word " heir," not in its technical sense, but in its most general sense, as indicating the person upon whom property devolves on the death of another, either by law or by will.  Cent. Dict. If he had used the words " legatee and devisee " instead of " heir," he would have expressed his intent more specifically.

But it is said by James that there is a latent ambiguity in the description of the property bequeathed by this clause, and that testimony of the understanding between him and Richard, by which the personal property acquired by the latter under Fred's will was to be equally divided between Sarah, James, and Richard, is competent for the purpose of removing the ambiguity. Apparently the only subject to which the description can refer is the property coming to Richard as legatee and devisee of

Fred. It is not alleged that Richard, before making his will, had actually transferred portions of the legacy to Sarah and James by a valid conveyance, but only that there was an understanding between Richard and James that the personal estate should be equally divided among the three. It does not appear that the understanding was of such a character as to bind Richard to its performance. In short, it is not shown that, at the date of Richard's will, there was any binding contract in existence which could render the description ambiguous in the respect suggested. The understanding on which James relies is not sufficient for the purpose, and cannot be considered as evidence in construing the will. Marion is entitled to whatever was coming to Richard at the time of his decease from Fred's estate.

2. What interest in, and power over, Richard's estate did the plaintiff acquire by the tenth clause of Richard's will? An analysis of the clause may aid in its construction. It contains in the first place a devise of the residue of the testator's estate to the plaintiff for and during her natural life. It then confers on the plaintiff "power to dispose of all and every portion thereof in her lifetime, if she shall find the same necessary to her comfortable support and maintenance, or shall desire so to do." Then, as if this provision was thought not to be sufficiently explicit, it grants the plaintiff three rights specifically: (1) The right to sell and convey any or all of the estate without license from the probate court; (2) the right to manage the estate as if the devise "were entirely absolute;" and (3) the right to spend the whole income of the same and the principal, if she finds it necessary to do so for her comfort, or desires to do so. Finally, as if to remove all possibility of doubt in respect to the nature and extent of the interest and power granted, it contains the following: "My will and wish being that she shall fully use, have, and enjoy said estate as if it were her own absolutely during her lifetime."

The estate thus devised is, by express terms, an estate for life; but powers are annexed to it which greatly increase its usefulness, although they do not enlarge it to a fee. *Burleigh* v. *Clough,* 52 N. H. 267; *Kimball* v. *Society,* 65 N. H. 139, 151, 152; *Langley* v. *Farmington,* 66 N. H. 431, 432.

The question to be answered relates principally to the extent of the plaintiff's power to use the property devised. Is this power limited to providing for her reasonable necessities, or may it be exercised to gratify her desires? This question is answered by the express grant of "the right to spend the whole income of the same [residue] and the principal, if she finds it necessary to do so for her comfort, or desires so to do." Besides this provision, there are other provisions that tend very strongly to show the same intention. As has been seen from the foregoing anal-

ysis, there is a prior provision expressing this intent, but with less certainty. The testator's final expression of his " will and wish " that the plaintiff " shall fully use, have, and enjoy said estate as if it were her own absolutely during her lifetime " is unambiguous and emphatic to the same effect. The words " during her lifetime " were evidently intended to limit the duration of her enjoyment of the estate and powers. They may be transposed without affecting the sense, so that the sentence will read, " My will and wish being that she shall fully use, have, and enjoy said estate during her lifetime as if it were her own absolutely." The bequest to Olivet College, in the ninth clause of the will, was made subject to a condition placed in the control of the plaintiff. If, in her judgment, the condition of the testator's estate did not warrant the bequest, it was to be void. The devise over after the termination of the life estate was not of the same property that was given to the plaintiff for life, but only of what remained of that property at her decease, " whether of principal or of accrued income, in whatever form the same may be." The provision that the plaintiff should not be required to give a bond for the faithful performance of her duty as executrix, or return an inventory of the estate, or render an account of her administration, is weighty evidence on this point. There is no conflict in the evidence. It all tends to prove an intent that the plaintiff should have power to use the property during life as she desired, or " as if it were her own absolutely." If she desires to live in a more expensive style than she has lived in the past, or to travel, or to make charitable gifts, or to do any other thing within the bounds of good faith, she has power to use for the purpose the property bequeathed to her. Of course she must act in these matters in good faith, and not squander the estate for the mere purpose of preventing it from going to the remainder-man. The power is not sufficiently extensive to allow her to dispose of the property by will. It is only to be exercised during the active enjoyment of the life estate and in aid of that enjoyment. Whatever of the property shall remain after she has used in good faith so much of it as she desires, will go to the remainder-man under the eleventh clause of the will.

*Case discharged.*

All concurred.