Hillsborough, }
Dec. 23, 1946. } No. 3608.

CLINTON S. OSGOOD & a., *Trustees v.* ALBERT VIVADA & a.

*McLane, Davis & Carleton; Arthur A. Green, Jr.* and *Stanley M. Brown* (*Mr. Brown* orally), for four claimants.

*Maurice A. Broderick* (by brief and orally), for four claimants.

*Maurice F. Devine* and *Joseph A. Millimet* (*Mr. Millimet* orally), for one claimant.

*Hamblett & Hamblett* and *James L. Sullivan* (by brief), for one claimant.

*Samuel A. Margolis* and *J. Morton Rosenblum*, filed no briefs.

BURQUE, J. At the outset we wish to say that we have made a careful examination of the photostatic copy of the will, submitted to us by agreement, and we find no basis for the claim advanced by one of the attorneys that the word "the" appearing after "and paid over

to the children of said grandchildren or 'the' heirs" probably spells "ther." Wherever the word "the" appears throughout the will we find it written out in the same way; where "their" appears it is spelled out fully, and where the words "the heirs" are juxtaposed they are written out in the same way. If perchance the claim should prevail that in the particular instance referred to the word preceeding heirs is spelled "ther" this would lend greater support to our interpretation of the words used.

"The supreme rule . . . [in] the interpretation of a will is the ascertainment of the testator's intention. . . . It is not necessary that the intention . . . should be expressed in a particular form of words, or by the use of technical terms. 'It is sufficient if the intention . . . can be gathered from the instrument, read in the light of the competent evidence bearing upon its interpretation.' *Upton* v. *Hosmer*, 70 N. H. 493, 495. The testator's intention is the sole subject of inquiry. It 'is determined as a question of fact by competent evidence, and not by rules of law.' *Edgerly* v. *Barker*, 66 N. H. 434, 447. . . . When ascertained, such intention is to be given effect, with the exception, however, that the intention cannot be followed when it is impossible or illegal to do so, 'for an intention will not avail to create an illegal or an impossible estate.' *Burleigh* v. *Clough*, 52 N. H. 267, 271." *Hayward* v. *Spaulding*, 75 N. H. 92, 93, 94. See *Kennard* v. *Kennard*, 63 N. H. 303, 310, and cases cited.

The intention of the testator here seems to us very plain. He sought to and did create two estates,—the first for the benefit of the grandchildren of his sister or the heirs, they to receive the income of the real estate so long as there were grandchildren alive. We construe the word "the" to mean "their" heirs; to wit, the heirs of the grandchildren. These grandchildren were all living at the time the testator made his will. He knew them and selected them as the objects of his bounty. We need not concern ourselves with the question whether he intended only those grandchildren then living or grandchildren that might be born after his death. There is nothing in the case to indicate there was even any remote possibility of any being born thereafter. All we are required to do is to accept the facts as we find them.

This bequest gave these grandchildren and their heirs a vested interest in the estate created; to wit, enjoyment of the income, a life estate, so long as one grandchild survived.

The second estate he sought to and did create was a remainder, the corpus of the estate to be constituted of the proceeds of the sale of all his real estate which was subject to a life estate, to be divided equally

among the children of said grandchildren or the heirs. We again construe "the" to mean "their," the only natural construction. It is easy enough to perceive that the testator wanted to preserve the fee during the lifetime of the grandchildren and their heirs until the death of the last surviving grandchild. When the latter event occurred the sale and distribution was to be made, and the objects of his bounty were then to be the great-grandchildren and their heirs. The testator's intention so construed becomes clear and unequivocal and such construction gives it full effect. It recognizes two classes, or groups, whichever designation one prefers, grandchildren and their heirs, great-grandchildren and their heirs. Consistency in interpretation compels this result. *Fowler* v. *Whelan*, 83 N. H. 453, 457. If we say, as we all agree, that in the first instance "grandchildren or the heirs" means the heirs of the grandchildren, it must necessarily follow that "children of said grandchildren (which can mean nothing else than great-grandchildren) and the heirs" must necessarily mean the heirs of the great-grandchildren. Any other construction does violence to the use of very ordinary language. It seems to be conceded that if the scrivener, whether a layman or one versed in the law, had used the word great-grandchildren instead of the words "children of said grandchildren" the interpretation to be adopted would be the heirs of the great-grandchildren. But because the word grandchildren comes after the word children or comes last in order it is contended that "the heirs" mean the heirs of the grandchildren. There seems to be no logic in this, it is too fine a distinction, it is splitting hairs, it is putting aside a grammatical rule that words connected together as these are must be taken and construed together. They cannot be disassociated.

The above contention loses sight of the fact that the great-grandchildren took a vested interest at birth. From then on that interest, recognized in law as a vested remainder, was subject to alienation, assignment, disposal by will, etc., and if not alienated, assigned, bequeathed, or devised, is inherited by the heirs of the owner of said interest. *Hayward* v. *Spaulding, supra*. Thompson, Construction of Wills, s. 508. This gives effect to the vested interest rule in force in this state. Wherever possible a future interest will be deemed vested, and vested not only for the purpose of classification but vested in the sense that the interest is not defeated by death during the life tenancy but is transmissible to the heirs of the remainderman, or assignable during the remainderman's life. *Upton* v. *White*, 92 N. H. 221, 226, and cases cited; *Holmes* v. *Alexander*, 82 N. H. 380, 386; *Hall* v. *Wig-*

*gin,* 67 N. H. 89, 92; *Parker* v. *Leach,* 66 N. H. 416, 417 and cases cited. See also *Brown* v. *Philbrick,* 79 N. H. 69. Restatement, Property, *s.* 37, *comment* a; *s.* 69, *comment* c. This is the better and majority rule everywhere. *Knight* v. *Pottgieser,* 176 Ill. 368; *Ross* v. *Drake,* 37 Pa. St. 373; *Gibbens* v. *Gibbens,* 140 Mass. 102; *Byrnes* v. *Stilwell,* 103 N. Y. 453; *Cox* v. *Handy,* 78 Md. 108. For full discussion of this, see 69 C. J. (Wills) *ss.* 1269-1276, *pp.* 248-259; 33 Am. Jur., *ss.* 99-104, *pp.* 556-561; 128 A. L. R. 306, Anno.

The next question to be considered is whether these great-grand-children or their heirs take *per stirpes* or *per capita.* The trustees are advised they take as follows: Great-grandchildren surviving the last grandchild each take one share *per capita,* and the representing heirs of the respective deceased great-grandchildren each take the share of a deceased great-grandchild *per stirpes.* *Campbell* v. *Clark,* 64 N. H. 328; *McLane* v. *Crosby,* 77 N. H. 596, 597; 3 Page on Wills, *s.* 1076.

*Case discharged.*

All concurred.