ESTATE OF Ida Maude SOWELL, Homer T. Sowell, Executor, Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 81–1912.

United States Court of Appeals, Tenth Circuit.

June 9, 1983.

Patricia Tucker, Smidt & Tucker, P.C., Albuquerque, N.M. (Kendall O. Schlenker, Schlenker & Lebeck, P.A., Albuquerque, N.M., with her on the briefs), for plaintiff-appellant.

Kenneth L. Greene, Atty., Tax Div., Dept. of Justice, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., and Michael L. Paup and Jonathan S. Cohen, Attys., Tax Div., Dept. of Justice, Washington, D.C., with him on the brief), for defendant-appellee.

Before DOYLE and McKAY, Circuit Judges, and BRATTON, District Judge.*

WILLIAM E. DOYLE, Circuit Judge.

This is an appeal from the United States Tax Court, 74 T.C. 1001 (1980). It seeks review of a judgment that the corpus of the Thomas R. Sowell Trust was includable in the estate of appellant's decedent, Ida Maude Sowell, for federal estate tax purposes. In the Tax Court both sides filed motions for summary judgment. The judge upheld the position of the Commissioner of Internal Revenue. We reverse.

The issue is whether the Tax Court erred in holding that the power to invade the trust corpus, "in case of emergency or illness", constitutes a general power of appointment and therefore the entire corpus should have been included in the gross estate of appellant's decedent pursuant to Section 2041 of the Internal Revenue Code of 1954; 26 U.S. Code § 2041. The appellant's argument states that in determining whether this invasion meets the requirements of § 2041(b)(1)(A) for exclusion from treatment as a power of appointment requires a two-step analysis. *First,* the standard of invasion must be ascertainable, that is, capable of being readily interpreted and applied by a court of law. *Secondly,* the standard of invasion must be related to or reasonably measurable in terms of the decedent's needs for health, support, or maintenance. Appellant urges that Mrs. Sowell's power of invasion is ascertainable and in addition is reasonably measurable in terms of her need for health and support. Accordingly, it does not constitute a general power of appointment within the meaning of the code.

The contention of the appellant is that the power to invade the corpus of a trust is limited by an ascertainable standard. Is the power one which is sufficiently definite so as to be capable of being enforced in a court of equity? The Tax Court expressly found, according to appellant, that Mrs. Sowell's power to invade in cases of emergency or illness constituted a power of invasion limited by an ascertainable standard within the meaning of § 2041 of the Code. The power to invade a trust corpus in the case of emergency has frequently been interpreted by the I.R.S. as constituting an ascertainable standard of invasion enforceable in a court of equity under the Code.

Ida Maude Sowell was the surviving spouse of Thomas R. Sowell, who died in November of 1967. She was named Trustee of a testamentary trust established by her husband's will. By the terms of the trust the net income was payable to Mrs. Sowell during her natural life, and upon her death, the corpus of the trust and all accumulations were to be distributed to Mr. Sowell's sons and daughter-in-law. The Trustee was also given "the right to invade the corpus of said trust in cases of emergency or illness."

Mrs. Sowell died in November, 1976. In the course of probate, a federal estate tax return was prepared and was filed. This return did not include in Mrs. Sowell's gross estate any portion of the testamentary trust which had been willed to Mrs. Sowell by her husband and this is because her beneficial interest in the trust was con-

---

* Howard C. Bratton, Chief Judge, United States District Court, District of New Mexico, sitting by designation.

sidered to be a life estate and was terminated at her death.

The Commissioner of Internal Revenue, upon auditing the return, determined that the power of decedent as Trustee to invade the corpus of the Sowell trust in cases of emergency or illness constituted a general power of appointment over the entire trust corpus held by Mrs. Sowell, and, accordingly, proposed inclusion of the entire corpus of the trust in Mrs. Sowell's estate. The trust was valued at approximately $319,000.00. Statutory notice of deficiency in the amount of $101,104.78 in federal estate tax was given to the executor of Mrs. Sowell's estate. A petition protesting the notice of deficiency was timely filed in the United States Tax Court. Thereafter, the Tax Court ruled that the power given to the trustee-beneficiary to invade the corpus of the trust in cases of emergency or illness was a general power of appointment within the meaning of § 2041 of the Internal Revenue Code. The ruling was that the corpus of the trust should have been included in Mrs. Sowell's estate for federal estate tax purposes.

The first question is: What is the meaning of "the right to invade the corpus of said trust in cases of emergency or illness"? What is meant by the term "emergency"?

Bouvier's Legal Dictionary states that an emergency is "an unforeseen occurrence or condition; see accident." The term "accident" is defined as "an event which, under the circumstances, is unusual and unexpected; an event the real cause of which cannot be traced or is at least not apparent."

The appellant argues that the standard in order to qualify as being exclusionary from treatment as a power of appointment requires a two-step analysis. First, the standard of invasion must be "ascertainable", i.e., capable of being interpreted and applied by a court of law. Secondly, the standard of invasion must be related to or reasonably measurable in terms of the decedent's needs for health, support or maintenance. Appellant urges that Mrs. Sowell's power of invasion is both ascertainable and reasonably measurable in terms of her need

for health and support, and accordingly, does not constitute a general power of appointment within the meaning of the code.

Appellant further argues that a power to invade the corpus of a trust is limited by an ascertainable standard if the power is one which is sufficiently definite so as to be capable of being enforced in a court of equity. The Tax Court expressly found, according to appellant, that Mrs. Sowell's power to invade in cases of emergency or illness constituted a power of invasion limited by an ascertainable standard within the meaning of § 2041 of the Code. The power to invade a trust corpus in the case of an emergency has been interpreted by the I.R.S. as constituting an ascertainable standard of invasion enforceable in a court of equity under the Code.

Appellant maintains that the trust here being considered is indistinguishable from language which has consistently been held to be the equivalent of granting power of invasion for support and maintenance or for other permitted standards of invasion. Appellant discusses numerous cases which have construed trust instruments containing a power of invasion in the event of an emergency. Appellant maintains that these cases demonstrate that in construing the meaning of this trust provision, the court must look to all of the language of the trust rather than simply one word interpreting the questioned language in the context in which it is found. Here, no broadening language is contained in the trust. There is no language indicating that the lifetime beneficiary was to be preferred over the remaindermen. The Tax Court erred in its underlying assumption that the word "emergency" has an inherent meaning broader than health, education and support. The key characteristic of the meaning of "emergency" is that of need. The Tax Court also erred in concluding that the concept of an "emergency" included broader uses than for support or maintenance.

Appellee's contention boils down to the question whether the phrase "in cases of emergency or illness" is an ascertainable standard related to Mrs. Sowell's health,

education and support or maintenance. The taxability of an interest or power possessed by the decedent is determined under federal law, according to appellee, and the extent of the decedent's interest is governed by state law. A more precise question then is whether the courts of New Mexico, the jurisdiction in which decedent's will was probated, would hold that the phrase "in cases of emergency or illness" · constitutes an ascertainable standard relating solely to decedent's health, education, support or maintenance. New Mexico law provides that the intent and meaning of the testator must be ascertained from the will itself, according to appellee. In determining the testator's intention, the purpose is to ascertain not what he meant to express apart from the language used, but what the words used actually express. Certainly the New Mexico court could readily ascertain the meaning of the governing words here.

Webster's Third International Dictionary emphasizes the true meaning of "emergency":

Emergency:

1. an unforeseen combination of circumstances or the resulting state that calls for immediate action (they were far from help when the emergency overtook them) as

a: a pressing need: exigency (a state of emergency existed during which any help was acceptable)

b: a sudden bodily alteration such as is likely to require immediate medical attention (as a ruptured appendix or surgical shock) * * *.

Judged by the definitions given, it is an event which is special; also, it is sudden; moreover, it calls for immediate action, or it is pressing. It is also interesting that one of the examples employed was "that which requires immediate medical attention, as a ruptured appendix or surgical shock." So, therefore, the term "emergency" is a limiting word and would not tolerate any excuse. Accordingly, mental depression requiring a trip around the world, would not be a proper occasion for invading the trust.

The appellee maintains that the term "emergency" is not one that is clearly limited in its exercise to matters relating to decedent's health, education, support or maintenance. As used, the term "emergency" is clear and unambiguous, they say. The use of such a general term creates a broad power that can be utilized for any purpose so long as an emergency exists. To relate the word "emergency" to decedent's health, education, support or maintenance would require the addition of words that would contradict the plain meaning of the will.

Also, the appellee argues that the cases cited by the estate in support of its position are distinguishable from the instant case since they each involve wills that included additional language that was intended to limit and modify the words "emergency". No such additional language is present here. Each case cited by appellant arises under sections of the Code other than § 2041. It is said that the tests here used differ in a material and substantial manner from the ascertainable standard test found in § 2041.

Our conclusion is that an emergency is an emergency, and it is not susceptible to the expansive application suggested.

In the case of *Funk v. Commissioner of Internal Revenue,* 185 F.2d 127, 130–32 (3d Cir.1950), a petition to review a decision of the Tax Court was opposed by the Commissioner of Internal Revenue. The court reviewed a decision of the Tax Court of the United States to determine whether the income of four trusts, of which the petitioner was the sole trustee, was taxable to the petitioner. The Court of Appeals held that the petitioner was not endowed in the trust instruments with such unfettered command · that the income from the trusts was her own money. She was only entitled, therefore, to receive income in accordance with her "needs". The Court there said:

The term "needs" is not, of course, one the content of which can be defined precisely. Nevertheless, we think it establishes a standard effectively distinguishing this case from, and taking it out of the rule of, the *Mallinckrodt [v. Nunan,*

146 F.2d 1 (8th Cir.1945)] and *Stix* [*v. Commissioner,* 152 F.2d 562 (2nd Cir. 1945)] decisions. If, as the Tax Court observed, the trusts are unambiguous and specific, it can only be said of the term "needs" that it must construed according to its ordinary meaning. While obviously it must include the essentials of life, it has been construed in New Jersey to mean that which is reasonably necessary to maintain a beneficiary's station in life. It is not indicative of an unqualified gift, nor is it dependent upon the fancy of the administrator. Thus, its use confined the trustee to limits objectively determinable, and any conduct on her part beyond those limits would be unreasonable and a breach of trust; certainly it did not countenance extravagance, whim, or caprice. And, as we have already noted, the absence of "needs", contrary to the situation of *Mallinckrodt* and *Stix,* did not result in the entitlement of the taxpayer to the trust income.

The case of *Pittsfield National Bank v. United States,* 181 F.Supp. 851, 854 (D.Mass.1960) involved the power to invade corpus on basis of "need" and it was held not to be a general power of appointment within the meaning of § 2041. In Pittsfield, the Court said:

> The word "need" according to its dictionary definition and the cases interpreting it, has an even narrower and explicit meaning than the words discussed above, i.e., "want of the means of subsistence, necessity". The principal case explaining the word, *Lincoln v. Willard,* 1937, 296 Mass. 549, 6 N.E.2d 774, 776, requires a showing of "actual financial or physical necessity" before the life tenant could exercise a power to sell "if she should need to during her lifetime". See also *Lovett v. Farnham,* 1897, 169 Mass. 1, 47 N.E. 246.

The Court further said:

> * * * The grant of the power must be read in its entirety, and so read I (sic) rule that it was a grant of a power to invade corpus only in the event the donee was in financial or physical need.

One additional case which is relevant is the decision of the Supreme Court of New Jersey in *Reeves v. Beekman,* 42 N.J. Eq. 613, 9 A. 27, 30 (N.J.1887), aff'd, 44 N.J. Eq. 295, 18 A. 80 (1888). Here the testator had bequeathed to his daughter "so much of the principal [of a fund] as she may need, and her circumstances may require". The holding of that New Jersey case was that it was not effective as a gift to the daughter of an unqualified control of the fund.

We have exhaustively researched this issue and have not discovered a case which broadly construes the term "emergency" so as to allow a general power of appointment, sufficient to render a fund taxable to an estate.

Our conclusion is that no such case exists; that the term "emergency" is a restricted term which would tolerate obtaining the money from the trust only if the situation was extraordinary.

Accordingly, the judgment of the Tax Court must be reversed, and the cause must be remanded for further proceedings.

It is so ordered.