Hyde v. USA                                    CV-95-296-M    09/16/96 P

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Richard C. Hyde, Executor,
of the Estate of Dorothy Hyde
        Plaintiff,

        v.                                          Civil No. 95-296-M

United States of America,
        Defendant.


O R D E R


In this suit, the Estate of Dorothy Hyde seeks a refund of estate taxes it claims to have overpaid as a result of its having mistakenly included in the decedent's gross taxable estate the value of certain trust assets over which Hyde had a power of appointment. The Internal Revenue Service ("IRS") refused the refund claim on grounds that the decedent held a general power of appointment, effectively making the assets her own. Plaintiff appeals that decision on grounds that the power of appointment was not a general power for federal estate tax purposes because it was limited by "ascertainable standards" related to her health, education and support, as required by pertinent Treasury Regulations (the "Regulations").

The estate and the government have filed cross-motions for summary judgment. For the reasons discussed below, the

government's motion for summary judgment (document no. 8) is granted and the estate's motion for summary judgment (document no. 7) is denied.

## I. STANDARD OF REVIEW

Summary judgment is proper "if pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact "is one `that might affect the outcome of the suit under the governing law.'" United States v. One Parcel of Real Property with Bldgs., 960 F.2d 200, 204 (1st Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. Anderson, 477 U.S. at 256. The party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial, demonstrating "some factual disagreement sufficient to deflect brevis disposition." Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991), cert. denied, 504 U.S. 985 (1992). That burden is discharged only if the cited disagreement relates to a

2

genuine issue of material fact. <u>Wynne v. Tufts Univ. Sch. of Medicine</u>, 976 F.2d 791, 794 (1st Cir. 1992), <u>cert. denied</u>, 507 U.S. 1030 (1993).

## II.  FACTS

Dorothy Hyde died testate on May 5, 1992.  Her son, Richard C. Hyde, acting as executor, filed the estate's tax return and, among other assets, included in her estate the value of property left to Hyde in trust under the will of her mother, Amy F. Crowell, who of course predeceased Hyde.  Crowell's will created a testamentary trust, irrevocable on her death, which provided Hyde with a life estate interest in the trust's assets and empowered Hyde "to use the income and so much of the principal as in her <u>sole</u> <u>discretion</u> shall be <u>necessary and desirable</u>." Crowell Will, Article Eighth (emphasis added).

## III.  DISCUSSION

A decedent's gross taxable estate, for federal estate tax purposes, includes "any property with respect to which the decedent has at the time of [her] death a general power of appointment created after October 21, 1942 . . . ."  26 U.S.C.A. § 2041(a)(2) (1986).  A general power of appointment is one

3

"which is exercisable in favor of the decedent, [her] estate, [her] creditors, or the creditors of [her] estate," subject to certain exceptions. 26 U.S.C.A. § 2041(b)(1). The exception relied upon by the estate in this case provides that "[a] power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent shall not be deemed a general power of appointment." 26 U.S.C.A. § 2041(b)(1)(A).

Applicable Treasury Regulations further define a power limited by an ascertainable standard:

> [a] power to consume, invade or appropriate income or corpus, or both, for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent is, by reason of section 2041(b)(1)(A), not a general power of appointment. A power is limited by such a standard if the extent of the holder's duty to exercise and not to exercise the power is reasonably measurable in terms of his needs for health, education, or support (or any combination of them). As used in this subparagraph, the words "support" and "maintenance" are synonymous and their meaning is not limited to the bare necessities of life. A power to use property for the comfort, welfare, or happiness of the holder of the power is not limited by the requisite standard. . . .

4

Treas. Reg. § 20.2041-1(c), -3(c)(2) (1995).  So, for Hyde's power of appointment to qualify as a limited one under the exception it must meet two requirements: 1) it must be limited by an ascertainable standard; and 2) the limiting standard must relate to her own health, education, and/or support or maintenance.  Estate of Little v. Commissioner, 87 T.C. 599, 600 (1986); Estate of Sowell v. Commissioner, 708 F.2d 1564, (10th Cir. 1983).  Otherwise, the power is a general one, and the trust assets are taxable in Hyde's estate. Estate of Little, 87 T.C. at 600.

State law, here New Hampshire's, determines the scope of Hyde's right to invade and consume trust principal under the power, but federal law determines the tax consequences of Hyde's rights.  Morgan v. Commissioner, 309 U.S. 78, 80 (1940); Maytag v. United States, 493 F.2d 995, 998 (10th Cir. 1974); Jenkins v. United States, 428 F.2d 538 (5th Cir.), cert. denied, 400 U.S. 829 (1970).  The parties have not cited, nor has the court found, any applicable New Hampshire authority that might operate to limit or define the terms "necessary" and "desirable" as meaning, in this context, that Hyde could only exercise her power to apply trust assets to meet her personal needs for education, support or maintenance, or to maintain her own health.

5

When state law does not limit or define the terms used, the instrument itself must supply the meaning. Estate of Little, 87 T.C. at 600. Therefore, applying the state's general rule of construction applicable to testamentary trusts, the court necessarily looks to the testator's (Crowell's) intent as conveyed by the language she used, see In re Clayton J. Richardson Trust, 138 N.H. 1, 3 (1993); In re Dumaine, 135 N.H. 103, 106-07 (1991); In re Segal Estate, 107 N.H. 120, 121 (1966); Osgood v. Vivada, 94 N.H. 222, 224 (1946), to determine whether the limitation asserted by Hyde's estate is sufficiently measurable and related to Hyde's health, education, and/or support or maintenance to qualify the power as a limited power of appointment for federal estate tax purposes. Estate of Little, 87 T.C. at 600; Treas. Reg. § 20.2041-1(c).

The IRS argues that the plain meaning of the referenced language, considered in the context of Crowell's will, leaves little doubt that Hyde's power of appointment was, in reality, a general power. The government says that the words "necessary and desirable" are themselves broad in scope, and, because Hyde was at liberty to determine in her sole discretion what was "necessary and desirable," the power was obviously not sufficiently limited to escape federal taxation.

6

As mentioned, the Regulations recognize three types of qualifying limitations on a holder's power of appointment sufficient to avoid taxation as a general power - limitations relating to the holder's health, education, and/or support or maintenance. Treas. Reg. § 20.2041-1(c)(2). Here, the power of appointment contained in Crowell's will makes no specific reference to any particular purpose or purposes to be served by the only limitation she did place on her daughter's right to appropriate principal, i.e. that the purpose for invasion be "necessary and desirable" in the sole discretion of her daughter.

The inquiry then, is whether the terms "necessary and desirable" as used in the power were actually intended by Crowell to restrict her daughter's use of the trust principal by permitting Hyde to use those assets during Hyde's lifetime solely for her own education, her own support or maintenance, or her own health needs, and for no other purposes. The estate necessarily argues that that is precisely what Crowell intended, but its proffered construction seems far too harsh. Considering the terms used by Crowell in light of what she apparently wanted to accomplish, rather than from the vantage of hindsight illuminated by potential tax consequences, the only reasonable construction is that Crowell intended her daughter to have broad authority to

7

use the trust's assets. Indeed, similarly worded powers have routinely been held to be general powers of appointment for federal tax purposes because the apparent limitations did not relate solely to the health, education, or support of the holders. See Lehman v. United States, 448 F.2d 1318 (5th Cir. 1971) (power to consume corpus of estate "for [decedent's] own use, benefit, comfort, support, and maintenance" was not limited by an ascertainable standard); Peoples Trust Co. v. United States, 412 F.2d 1156 (3d Cir. 1969) (power to invade principal as beneficiary "from time to time may require; she to be the sole judge as to the amounts and frequency of such principal payments" was not limited by an ascertainable standard); Miller v. United States, 387 F.2d 866 (3d Cir. 1968) (power to invade corpus as trustees "deem necessary or expedient for proper maintenance, support, medical care, hospitalization, or other expenses incidental to her comfort and well-being" was not limited by an ascertainable standard); Strite v. McGinnes, 330 F.2d 234 (3d. Cir.) (trustees power to invade principal "to provide for the reasonable needs and proper expenses for the benefit or comfort" of the decedent not limited by ascertainable standard), cert. denied, 379 U.S. 836 (1964).

In this case, too, Crowell's will contains no express limitation upon the purposes for which trust principal could be used by Hyde.  What might be "necessary and desirable" in Hyde's "sole discretion" is not, then, "reasonably measurable" in terms of the Regulations' qualifying limitations.  As drafted, Hyde's power had no practical limitations, much less ones contemplated by the applicable exception.

Plaintiff understandably endeavors to limit the word "necessary" by reading into it the concept of "emergency," arguing that "necessary" as used by Crowell actually meant that which is "absolutely required" or "indispensable." Plaintiff's Memorandum in Support of Summary Judgment at 5-6 (quoting Webster's Third New International Dictionary).  An express limitation requiring an "emergency" in order to invade principal has indeed been held, in context, to qualify a power of appointment as a limited one for federal tax purposes. See, e.g., Estate of Sowell, 708 F.2d 1564 (10th Cir. 1983).  But the term "necessary" standing alone is not apparently synonymous with "emergency," and the estate points to no precedent equating the two terms.  "Emergency," as the term is generally used, includes in its meaning an unavoidable sense of exigency or immediacy not conveyed by the term "necessary."  Estate of Sowell, 708 F.2d at

9

1567 (quoting Webster's Third International Dictionary).  In Estate of Sowell the court expressly relied on the sense of immediacy conveyed by the term "emergency" to hold the power of appointment at issue there to be a limited one. Id.

The important question not specifically addressed in Crowell's will is, of course, "Necessary for what?"  One can easily imagine a number of "necessary and desirable" expenditures from principal that Hyde could have made under her power unrelated to her own "health, or education, or support or maintenance."  Paying for the education of her children (the remaindermen), paying for medical care for needy family members, travelling for purely recreational reasons, substantially improving her standard of living, or purchasing art to enhance her sense of happiness, are but a few of many possible examples of expenditures that Hyde could have deemed to be "necessary and desirable" in her sole discretion and that could not have reasonably been challenged as ultra vires under the power as written (and as undoubtedly intended by Hyde's mother), yet which would be well beyond the limitations necessary to avoid federal taxation.  See also First Virginia Bank v. United States, 490 F.2d 532, 533 (4th Cir. 1974) (under Virginia law, right of invasion for beneficiaries' "comfort and care as she may see fit"

10

not limited by an ascertainable standard). Crowell's use of the term "desirable" (again, desirable in Hyde's sole discretion) also confirms her intent to empower her daughter to apply the trust assets to whatever purposes Hyde might wish during her lifetime.

For estate tax purposes, then, Crowell's will provided Hyde with a general power of appointment, allowing her to basically treat the trust principal as her own and to use it for any purpose she in her sole discretion deemed necessary and desirable. Therefore, the trust's assets were properly included in Hyde's gross taxable estate when she died, because "the practical exercise of her powers of disposition and control for her own benefit was not confined within limitations at least as stringent as those prescribed by federal law . . . ." Lehman, 448 F.2d at 1319-20 (citations omitted).

Finally, in a supplemental memorandum of law, the estate argues that the provisions of N.H. Rev. Stat. Annot. ("RSA") 564-A:5 II (which requires prior probate court approval before a trustee can exercise a power where the trustee's interest conflicts with his or her individual interest or his or her interest as trustee of another trust) supplies the necessary ascertainable limiting standard to qualify Hyde's power as a

11

limited one. And, the estate also argues in that supplemental memorandum that "HB 1212" (New Hampshire Laws 1996, Ch. 96 (effective July 1, 1996)) operates to retroactively transform the general power of appointment created in Crowell's will into a power exercisable by Hyde only to provide for her health, education, maintenance, or support as described in § 2041.

The court disagrees on both points. As the power held by Hyde was general in nature, there could be no conflict — she was free to treat the property as her own, limited only by New Hampshire's implied good faith duty not to squander the property merely to prevent it from going to the remaindermen. Shapleigh v. Shapleigh, 69 N.H. 577 (1899). (That good faith duty does not qualify as an ascertainable limiting standard under section 2041. Independence Bank Waukesha v. United States, 761 F.2d 442, 445 (7th Cir. 1985) (citing cases)). But, even if Hyde's exercise of the power could have put Hyde in a conflict situation, the probate court's prior authorization or refusal to authorize an invasion of principal for a permitted purpose under the power (but a purpose not limited to those described in § 2041) would have absolutely no relevance in determining whether the trust assets are or are not subject to federal estate taxation. The critical point is whether the power was qualifiedly curtailed or

12

not, that is, whether it was exercisable only to provide for Hyde's personal health, education, or support.

As for the estate's reliance on Laws 1996, Ch. 96, for a statutorily mandated retroactive construction of the terms "necessary and desirable" consistent with the section 2041 exceptions, the simple answer is that the statute cannot apply to this situation because both Crowell and Hyde died (and rights became vested and irrevocable) long before the law became effective. See e.g. Estate of Vissering v. Commissioner, 990 F.2d 578, 580-81 n.2 (10th Cir. 1993).

## IV.  CONCLUSION

Plaintiff's motion for summary judgment (document no. 7) is denied and defendant's motion for summary judgment (document no. 8) is granted.

13

SO ORDERED.


                                            _____
                                            Steven J. McAuliffe
                                            United States District Judge

September 16, 1996

cc:  Mark A. Langan, Esq.
      Carina J. Campobasso, Esq.
      Gretchen Leah Witt, Esq.