Hillsborough
No. 90-176

*In re* FREDERIC C. DUMAINE & a.

December 6, 1991

*Devine, Millimet & Branch P.A.*, of Manchester (*Joseph A. Milli-met* on the brief and orally), and *Dechert Price & Rhoads*, of Boston, Massachusetts (*Alan L. Lefkowitz* and *Alicia Reines-Leo* on the brief), for the petitioners, Frederic C. Dumaine *& a.*, Trustees.

*McLane, Graf, Raulerson & Middleton P.A.*, of Manchester (*Charles A. DeGrandpre* and *Mark C. Rouvalis* on the brief, and *Mr. DeGrandpre* orally), for Lael Elizabeth Dumaine Fuhs and Peter Thomas Dumaine.

*Wiggin & Nourie*, of Manchester (*Mark A. Langan* and *Dort S. Bigg* on the brief), and *Cadwalader, Wickersham & Taft*, of New

York, New York (*William Schwartz* on the brief and orally), for Elizabeth Ann Charney.

*Robert A. Backus*, of Manchester, guardian ad litem for unknown beneficiaries, filed no brief.

BATCHELDER, J.   Elizabeth Ann Charney appeals the ruling of the Superior Court (*Pappagianis*, J.) that she is not a member of the class of "legitimate" beneficiaries of the Dumaines and Dumaines New Fund trusts. She raises five issues on appeal. First, she argues that the trial court erred in its construction of the term "legitimate" as "lawfully begotten, born in wedlock." Second, she asserts that the trial court improperly relied on depositions containing inadmissible hearsay in determining the settlor's intent. Third, she maintains that, even though she was adopted, the subsequent marriage of her natural parents and their recognition of her as their child qualifies her as a beneficiary under the language of the trusts. Fourth, she argues that the trial court's determination of the settlor's intent was impermissible State action, violative of her rights under the equal protection and due process clauses of the United States and New Hampshire Constitutions. Finally, she contends that the trial court erred when it denied her request for attorney's fees. For the reasons that follow, we affirm.

The patriarch of the Dumaine family business complex was Frederic C. Dumaine, Sr., who founded the Amoskeag Company and amassed the wealth that formed the rest of the trusts involved in this litigation. Dumaines, a New Hampshire trust, was created by Frederic, Sr., in 1920. The Dumaines declaration of trust provides for income to be distributed "to legitimate children of Frederic C. Dumaine or to their legitimate surviving children," and provides for the distribution of the trust principal "to and among the legitimate issue or lineal descendants of the children of Frederic C. Dumaine living at that time."

Dumaines New Fund, also a New Hampshire trust, was created in 1955. The Dumaines New Fund declaration of trust provides for income to be distributed to "legitimate children . . . of Frederic C. Dumaine, Sr. . . . and . . . to the legitimate issue . . . of any such children deceased," and provides for the distribution of the trust principal "to the legitimate issue of Frederic C. Dumaine, Sr."

On January 19, 1956, Elizabeth Ann Charney was born to Evelyn Lafferty Richardson Humphreys, who was unmarried at the time. Pierre Dumaine, a son of Frederic C. Dumaine, Sr., was the father. At

the time of the birth, however, Pierre Dumaine was married to Margaret Lael Edwards Dumaine, by whom he had two children, Peter Thomas Dumaine and Lael Elizabeth Dumaine Fuhs.

Evelyn Humphreys placed the baby for adoption immediately after she was born, and the child was adopted by John and Nelda Scudder of Brooklyn, New York, in 1957. Pierre and Margaret Edwards Dumaine were divorced in 1961. Pierre and Evelyn Humphreys were married six days later. In 1978, John Scudder contacted the attorney who had facilitated the adoption and stated that his daughter, seeking to determine her roots, wanted to locate her biological parents. She was then twenty-two years old, married, and the mother of one son. She was subsequently reunited with her biological parents and, during the next nine years, visited with them on three other occasions and attended their funerals.

The trustees of the Dumaines and Dumaines New Fund trusts sought a determination by the superior court of the class of beneficiaries entitled to distributions of income and principal under the trusts, and specifically of the rights of Elizabeth Ann Charney under those trusts. The superior court ruled that Charney was not a beneficiary of the trusts, because she was not "lawfully begotten, born in wedlock." This appeal followed.

■ At the outset, we must determine which jurisdiction's law controls the interpretation of the terms of the trusts. Charney argues that New York law should be applied, because it is the State where the birth, adoption, and initial acts of recognition occurred and, therefore, has significant relevant policy considerations to be preserved and protected. In this case, both trusts specifically state that they are executed "in the State of New Hampshire and with reference to the laws thereof; and the rights of all parties and the construction and effect of each and every provision shall be subject to and construed according to the laws of said State." We will respect the settlor's intent that New Hampshire law should govern the trust instruments. *See, e.g., In re Lykes Estate,* 113 N.H. 282, 284, 305 A.2d 684, 685 (1973) (New Hampshire testamentary trust interpreted under Texas law, according to direction of testator); RE-STATEMENT (SECOND) OF CONFLICT OF LAWS §§ 268, 277 (1971). Moreover, this court has previously applied New Hampshire law in interpreting the trusts involved here. *See Bartlett v. Dumaine,* 128 N.H. 497, 523 A.2d 1 (1986). Consequently, we hold that New Hampshire law applies.

Charney first argues that the term "legitimate" is unambiguous and, as such, should be given its legal definition, which she contends

is "to make lawful." We agree that the term is unambiguous, but reject Charney's proposed definition.

The definition of "legitimate" proffered by Charney, *i.e.*, "to make lawful," applies only when the term is used as a verb. Indeed, the example employed in the definition of the verb "to legitimate" in BLACK'S LAW DICTIONARY 901 (6th ed. 1990), "to place a child born before marriage on the legal footing of those born in lawful wedlock," is exactly what Charney is striving to do in this case. Because of the use of the term as an adjective in the trust documents, however, her efforts "to legitimate" her status must fail.

■■ "In searching for the proper interpretation of words used in a written instrument, we require that the words and phrases be given their common meaning." *In re Trust u/w/o Smith*, 131 N.H. 396, 398, 553 A.2d 323, 324 (1988). The classes of beneficiaries entitled to distributions under these trusts are described alternatively as "legitimate children," "legitimate surviving children," "legitimate issue or lineal descendants," or "legitimate issue." In all instances, "legitimate" is used as an adjective; nowhere in the trust instruments is it employed as a verb. The term's common meaning as an adjective is found in WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1291 (3rd ed. 1961): "lawfully begotten: born in wedlock: having full filial rights and obligations by birth." Thus, a child whose parents were unwed at the time of his or her birth, regardless of the child's subsequent adoption or the intermarriage of his or her parents, is not "legitimate" under the term's common meaning and as the term is used in the trust documents.

Focusing on the phrase "legitimate issue or lineal descendants," which describes the ultimate takers of the trust assets upon termination of the Dumaines trust, Charney contends that, even if this court excludes her from the class of "legitimate issue," she is nevertheless entitled to take as a "lineal descendant." We agree with the trial court, however, that "legitimate" modifies both "issue" and "lineal descendants." A review of the trust instruments indicates that each reference to the beneficiaries includes the term "legitimate" as a modifier. This manifests the settlor's purpose to benefit only those of his descendants who are "legitimate." *See Bartlett*, 128 N.H. at 504, 523 A.2d at 6 (settlor's intent to be determined by the terms of the trust). Moreover, in the analogous principal distribution provision of the Dumaines New Fund trust, the distribution of assets on the trust's termination is directed to "legitimate issue"; the phrase "or lineal descendants" does not appear.

Charney also maintains that the trial court erred when it ruled that "legitimate" was ambiguous because it went outside the four corners of the document to determine the settlor's intent. She contends that, in doing so, the trial court erroneously considered inadmissible hearsay and improperly denied her a full evidentiary hearing. Because we hold that the term "legitimate" as employed in the trust documents is unambiguous and, as such, requires no parol evidence, we need not address this argument.

■ In addition, Charney contends that RSA 457:42 entitles her to take under the trusts. That statute provides:

"Marriage of Parents. Where the parents of children born before marriage afterwards intermarry, and recognize such children as their own, such children shall be legitimate and shall inherit equally with their other children *under the statute of distribution.*"

(Emphasis added.) On its face, the statute's purpose is to define the inheritance rights of children born out of wedlock whose natural parents had later intermarried, recognized them, and died intestate. It does not govern the distribution of funds under a private trust document. We therefore dismiss Charney's argument to the contrary.

Charney further argues that her intervening adoption did not negate her legitimization, which was accomplished by her parents' intermarriage and recognition of her as their child. Because we have held that her parents' marital status at the time of her birth controls her ability to take under the trusts, any events subsequent to her birth, such as her adoption, are of no consequence to her beneficiary status.

In support of the arguments presented above, Charney offers several unique theories as to why she should be included in the class of beneficiaries under the trusts. We find none of them to be compelling. First, she argues that Pierre Dumaine expressed in his will that it was his desire that she should be a beneficiary. However, absent a power of appointment over his share of the trust distributions, which he did not have, Pierre was powerless to direct where those funds would go upon his death. Second, she maintains that she was placed for adoption because of "fear of economic reprisals from the trustees" and that the fact of adoption, therefore, should not exclude her from the class of beneficiaries. Even if her allegation is true, many parents are forced to place a child for adoption because of economic factors. Further, we have already held that her adoption had no bearing on her ability to take under the trust instruments. Fi-

nally, Charney contends that equity requires that an adopted child not be denied his or her "right to take" under the trust document. This argument is equally unpersuasive, because no "right to take" ever existed.

Again focusing on her adopted status, Charney further argues that the trial court's ruling that a child born out of wedlock and subsequently given up for adoption will permanently retain the status of being illegitimate, despite the subsequent intermarriage of the child's natural parents and their recognition of the child as their own, violated her equal protection and due process rights under the State and Federal Constitutions. N.H. CONST. pt. I, arts. 2, 12, 14; U.S. CONST. amend. XIV, § 1. We disagree.

As a preliminary matter, we will analyze the respondent's argument under the protections afforded by part I, articles 2, 12 and 14 of the New Hampshire Constitution. *See State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983). To that extent, we look to federal cases merely for guidance. *See In re Certain Scholarship Funds*, 133 N.H. 227, 229–30, 575 A.2d 1325, 1326–27 (1990).

■■ We first address Charney's argument that the trial court's ruling resulted in a denial of her right to equal protection as a member of a class of children born out of wedlock. In order to implicate the provisions of the equal protection clause, however, the requisite "State action" must be demonstrated. *In re Certain Scholarship Funds, supra* at 230, 575 A.2d at 1327. Absent some action that may fairly be attributed to the State, there can be no constitutional violation, since the equal protection clauses of the State and Federal Constitutions "'erect[] no shield against merely private conduct, however discriminating or wrongful.'" *In re Certain Scholarship Funds supra* (quoting *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948)).

The trial court rejected Charney's constitutional claim, ruling:

"[A]ny adverse consequences from the fact she was not born in wedlock are not the result of state statutes or state provisions on descent and distribution, illegitimacy, adoption, or intermarriage of biological parents, but are the sole result of the intention of Frederic C. Dumaine, Sr., and of the other settlors that a beneficiary under Dumaines and Dumaines New Fund can be only a person 'lawfully begotten, born in wedlock.'"

We fail to find the necessary State action in the trial court's interpretation of the trust documents. *See Evans v. Abney*, 396 U.S. 435, 444 (1970) (action of Georgia Supreme Court declaring trust termi-

nated did not constitute State action); *see also In re Certain Scholarship Funds, supra* at 234, 575 A.2d at 1329. To hold otherwise would subject all judicial interpretations of private agreements to equal protection challenges.

■    The contention that Charney was divested of property rights in violation of the guarantees of due process is equally unfounded. "[I]t is the alteration or extinguishing of a right or status previously recognized by state law that invokes the procedural guarantees contained in the due process clause." *Medina v. Rudman*, 545 F.2d 244, 250 (1st Cir. 1976), *cert. denied*, 434 U.S. 891 (1977). We have already determined, however, that no "right to take" under the trusts ever existed. Consequently, we reject Charney's due process claim.

■■    Finally, Charney argues that the trial court erred as a matter of law when it denied her request for attorney's fees. "[T]he allowance of attorneys' fees is not a matter of right but rests in the cautiously exercised discretion of the court. Attorneys' fees should be allowed only in those cases where the litigation is conducted in good faith for the primary benefit of the trust as a whole in relation to substantial and material issues essential to the proper administration of the trust." *Concord Nat. Bank v. Haverhill*, 101 N.H. 416, 419, 145 A.2d 61, 63 (1958). The trial court found that "Elizabeth Ann Charney participated in this litigation primarily for her personal benefit and not for the primary benefit of the trust as a whole." Although Charney argues that, by participating in these proceedings, she "aided the trial court with key and relevant legal sources, authorities, and legal analysis, and has corrected misleading and erroneous assertions made by [the petitioners]," her evaluation of the benefit to the trial court from her participation in this litigation is not the determinative factor. The inquiry is whether her primary motive was the benefit of the trusts as a whole or her own benefit. On the facts of this case, the trial court did not abuse its discretion in determining that any purported aid it received from Charney was not "for the primary benefit of the trust as a whole." *Id.*

*Affirmed.*

HORTON, J., did not sit; the others concurred.