IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
July 17, 2007 Session

DATTEL FAMILY LIMITED PARTNERSHIP and TRAVELERS
PROPERTY CASUALTY COMPANY OF AMERICA as Subrogee of
DATTEL FAMILY LIMITED PARTNERSHIP v. MARY G. WINTZ

An Appeal from the Circuit Court for Shelby County
No. 002907-04     Rita L. Stotts, Judge

No. W2007-00081-COA-R3-CV - Filed October 10, 2007

This is an insurance case. The plaintiff landlord purchased insurance on an apartment building that he owned. The defendant tenant leased an apartment in the landlord's building. A fire occurred and damaged the apartment building. Pursuant to the insurance policy, the plaintiff insurance carrier paid the landlord to cover the fire damage. The landlord and the insurance carrier, as the landlord's subrogee under the contract of insurance, filed a lawsuit against the tenant, claiming negligence and breach of contract and seeking compensation for the damage to the apartment building caused by the fire. The tenant moved for summary judgment, asserting that, as a tenant, she was an implied co-insured under the landlord's insurance policy, and that consequently the plaintiff insurance carrier had no right of subrogation against the tenant. The trial court granted summary judgment in favor of the tenant. The landlord and the insurance carrier appeal. We affirm, holding that, in the absence of an express agreement to the contrary, the tenant is deemed a co-insured under the landlord's insurance policy, and therefore subrogation against the tenant is not available to the insurance carrier.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, J. and BEN H. CANTRELL, SR. J., joined.

Joseph L. Broy, Germantown, Tennessee, for Appellants Dattel Family Limited Partnership and Travelers Property Casualty Company of America

Gary R. Wilkinson and C. Michael Becker, Germantown, Tennessee, for Appellee Mary G. Wintz.

**OPINION**

Plaintiff Dattel Family Limited Partnership d/b/a Dattel Realty Company ("Dattel") owned a multi-family residential property, known as Embassy Apartments ("Embassy Apartments" or "Building"), located at 505 South Perkins Road in Memphis, Shelby County, Tennessee. Dattel

obtained a fire insurance policy for Embassy Apartments from plaintiff Travelers Property Casualty Company of America ("Travelers"). Dattel was the only named insured under the policy.

At some time prior to July 25, 2003, Defendant Mary G. Wintz ("Wintz") entered into an agreement ("Lease Agreement") to lease an apartment in Embassy Apartments. Paragraph 4 of the Lease Agreement states in part, "It is further understood that the Resident shall be liable for all damages done to the premises . . . and for all damages done to the premises at any time the Resident shall vacate same, ordinary wear and tear excluded." Paragraph 15 of the Lease Agreement states in full:

> It is understood and agreed that the Resident is responsible for the apartment. The Resident is responsible for the care of all walls, doors, door knobs, door keys, locks, mailbox locks, appliances, carpets, drapes, windows, screens, light fixtures, cabinets, commodes, sinks, feces and the entire appearance of the apartment during the term of this lease and until the lease has been terminated by the Landlord. The Resident is responsible for repairing all damages to the apartment other than those caused by normal wear and tear. The Resident is responsible for the insurance of their personal property in the case of fire or other perils that would be covered by a resident's renters insurance policy, as Dattel Realty Company's insurance policies do not cover personal property of the resident. Resident is also responsible for liability that resident may incur as the result of a negligent action by the Resident, both as to individual apartment leased or common areas, including elevators, stairwells, swimming pool, corridors, grounds, parking and paved areas.

On July 25, 2003, a fire occurred at Embassy Apartments, resulting in damage to Wintz's apartment and other parts of the Building as well. In fulfillment of its obligation under the insurance policy, Travelers paid Dattel $144,575.81 to compensate for the damage to the Building caused by the fire. Thereafter, Dattel and Travelers (collectively "Plaintiffs") filed a lawsuit against Wintz, alleging negligence and breach of contract. In the complaint, Travelers asserted that it was "legally and equitably subrogated" to Dattel's right of recovery against Wintz.

The complaint filed by Dattel and Travelers alleged that Wintz negligently discarded into a wastebasket matches that had not been completely extinguished, starting a fire that damaged Wintz's apartment and the rest of the building. They asserted that the fire damage made future performance under the Lease Agreement impossible, giving Dattel the right to terminate the lease; in turn, this triggered Wintz's contractual duties to return the apartment in good condition and reimburse Dattel for the fire damage. Dattel and Travelers alleged that Wintz's failure to return the apartment in good condition or reimburse Dattel was a breach of Wintz's contractual duties under the Lease Agreement.

In her answer, Wintz denied that she discarded the matches as alleged and denied that she breached the Lease Agreement. Wintz affirmatively alleged that any damage caused was the result of the negligence of Dattel or its agents.

-2-

Not long after that, Wintz moved for summary judgment. In her motion, Wintz asserted that she was an implied co-insured under the liability insurance policy between Dattel and Travelers. Because she was an implied co-insured, Wintz argued, Travelers had no right of subrogation and, therefore, could not maintain an action against Wintz for damages to the Building.

On December 14, 2006, the trial court granted Wintz's motion for summary judgment. Relying on *Allstate Ins. Co. v. Watson*, No. M2003-01574-COA-R3, 2005 WL 457846 (Tenn. Ct. App. Feb. 25, 2005), *aff'd on other grounds,* 195 S.W.3d 609 (Tenn. 2006), the trial court found that, in the absence of a provision in the Lease Agreement to the contrary, Wintz was an implied co-insured under the contract of insurance between Dattel and Travelers. Accordingly, the trial court reasoned, Travelers was precluded from asserting a subrogation claim against Wintz. From this order, Dattel and Travelers now appeal.

## ISSUE

On appeal, Dattel and Travelers raise the sole issue of whether the trial court erred in holding that Wintz, as Dattel's tenant, was an implied co-insured under the contract of insurance between Dattel and Travelers, and therefore erred in granting Wintz's motion for summary judgment.

## STANDARD OF REVIEW

Our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997). Granting a motion for summary judgment is appropriate only if there are no genuine issues of material fact and if the moving party establishes that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04 (2006); *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). In addition, summary judgment is proper when "there is no dispute over the evidence establishing the facts that control the application of a rule law." *Byrd v. Hall*, 30 S.W.2d 208, 214 (Tenn. 1993). On appeal, review of the trial court's grant of a motion for summary judgment presents solely a question of law. As such, our review is *de novo* with no presumption that the trial court's resolution of the legal issue was correct. *Bain*, 936 S.W.2d at 622.

Moreover, we "view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor." *Staples v. CBL & Associates, Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). Therefore, for purposes of this appeal, we assume the truth of the allegation in the complaint that Wintz negligently discarded matches, thereby starting the fire that resulted in the damage to the Building.

## ANALYSIS

Our analysis must begin with the Lease Agreement between Dattel and Wintz. "[T]he cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention as best can be done consistent with legal principles." *Petty v. Sloan*, 277

S.W.2d 355, 360 (Tenn. 1955). We ascertain the parties' intention from what was "actually embodied and expressed in the instrument as written." *Id.*

Here, it is undisputed that no provision of the Lease Agreement states expressly that Wintz is considered a co-insured or a beneficiary of Dattel's insurance policies. While the Lease Agreement states explicitly that Wintz is expected to obtain renter's insurance to cover her personal property, it does not state that Wintz is obligated to obtain insurance for the Building. Rather, the Lease Agreement references Dattel's insurance policy, stating that "Dattel Realty Company's insurance policies do not cover personal property of the resident." Under paragraph 4 of the Lease Agreement, the parties agreed that Wintz would be held liable for any damage done to her apartment in the course of her tenancy, as well as damage to the Building's "common areas." Thus, while the Lease Agreement states generally that Wintz is "responsible for liability that [Wintz] may incur as a result of negligent action by [Wintz]," it does not state expressly either that Wintz is a co-insured under "Dattel['s] . . . insurance policies" on the Building or that Wintz is obliged to obtain her own separate insurance on the Building.

Against this backdrop, Travelers seeks to apply the equitable doctrine of subrogation to recover from Wintz amounts paid to Dattel under Dattel's insurance policy. The doctrine of subrogation permits an insurer who has been " 'required to satisfy a loss created by a third party's wrongful act to step into the shoes of the [insured] and pursue recovery from the responsible wrongdoer.' " *Travelers Prop. Cas. Co. of Am. v. Terry*, No. M2005-02035-COA-R3-CV, 2007 WL 49558, at *2 (Tenn. Ct. App. Jan. 5, 2007) (quoting 73 Am. Jur.2d *Subrogation* § 1 (2001)). If subrogation were permitted in this case, Travelers, having received insurance premiums from Dattel and having been required to pay its insured, Dattel, for the fire damage to the Building, would be permitted to step into Dattel's shoes and pursue recovery for its loss against the party it alleges is responsible for starting the fire.

Subrogation is an equitable doctrine whose aim is to "plac[e] the burden of bearing the loss where it [o]ught to be." *Sutton v. Jondahl*, 532 P.2d 478, 482 (Okla. Ct. App. 1975). Subrogation is not appropriate in every circumstance; as an equitable doctrine, it is applied only if its application achieves equity under the facts and circumstances of the case at hand. *See Tate v. Trialco Scrap, Inc.*, 745 F. Supp. 458, 473 (M.D. Tenn. 1989) (noting that subrogation may not be appropriate under all circumstances); *Sutton*, 532 P.2d at 482. Moreover, "the right of subrogation cannot arise in favor of an insurer against its own insured." *Allstate Ins. Co. v. Watson*, 2005 WL 457846, at *5 (citing *Jindra v. Clayton*, 247 Neb. 597, 529 N.W.2d 523 (1995)). Therefore, if the tenant is deemed a co-insured under the landlord's insurance policy, the insurance carrier would be barred from bringing a subrogation action against the tenant to recover for damages to the landlord's insured premises. *Id.* A court may consider a tenant to be an "implied co-insured" under a landlord's insurance policy if it finds that the landlord's insurance coverage was intended for the mutual benefit of the landlord and the tenant, even if the tenant is not a named co-insured. Generally, the insurer will contend that the tenant is not the intended beneficiary of the landlord's insurance, while the tenant will argue to the contrary.

-4-

The issue of whether a landlord's insurance carrier should be subrogated to the rights of the landlord against an allegedly negligent tenant has been addressed by a number of other jurisdictions. *See* Aleatra P. Williams, *Insurers' Rights of Subrogation Against Tenants: The Begotten Union Between Equity and Her Beloved*, 55 DRAKE L. REV. 541, 580 (2007). From a survey of the jurisdictions that have spoken on this issue, we can distill three general approaches. A minority of courts hold that, absent a clear contractual expression to the contrary, the insurance carrier will be permitted to sue a tenant in subrogation. ***See, e.g., Winkler v. Appalachian Amusement Co.***, 79 S.E.2d 185, 191-92 (N.C. 1953) ("Upon paying a loss by fire, the insurer is entitled to subrogation to the rights of insured against the third person tort feasor causing the loss, to the extent of the amount paid . . . ."). Other jurisdictions, seeking to avoid a per se rule, hold that the applicability of the doctrine of subrogation should be assessed on a case-by-case basis and governed by the intent and reasonable expectations of the parties under the facts of the given case. ***See, e.g., Liberty Mut. Fire Ins. Co. v. Jefferson Family Fair, Inc.***, 521 S.W.2d 244, 245 (Ky. 1975) (holding that a requirement in the lease agreement that the landlord obtain fire insurance militated against the insurance carrier's right of subrogation); ***see also, Britton v. Wooten***, 817 S.W.2d 443, 445-47 (Ky. 1991) (finding that the absence from the lease agreement of a requirement that the landlord provide fire insurance permitted a right of subrogation). Under the third approach, frequently referred to as the Sutton Rule, courts hold that, absent a clearly expressed agreement to the contrary, the tenant is presumed to be a co-insured on the landlord's insurance policy, and therefore the landlord's insurance carrier has no right of subrogation against the negligent tenant. ***See, e.g., Sutton v. Jondahl***, 532 P.2d 478, 482 (Okla. Civ. App. 1975) ("Basic equity and fundamental justice upon which the equitable doctrine of subrogation is established requires [sic] that when fire insurance is provided for a dwelling it protects the insurable interests of all joint owners including the possessory interests of a tenant absent an express agreement by the latter to the contrary."). For ease of reference, we refer to these three approaches as the Anti-Sutton approach, the case-by-case approach, and the Sutton approach, respectively.

Reviewing decisions from other jurisdictions, the Anti-Sutton approach is a distinct minority. ***Neubauer v. Hostetter***, 485 N.W.2d 87 (Iowa 1992); ***Paramount Ins. Co. v. Parker***, 112 So. 2d 560 (Miss. 1959); ***Zoppi v. Traurig***, 598 A.2d 19 (N.J. Super. Ct. Law Div. 1990); ***Phoenix Ins. Co. v. Stamell***, 796 N.Y.S.2d 772 (N.Y. App. Div. 2005); ***Winkler v. Appalachian Amusement Co.***, 79 S.E.2d 185 (N.C. 1953).

The intermediate case-by-case approach appears to have been adopted by a slight majority of courts addressing the issue. ***See Gen. Acc. Fire & Life Assur. Corp. v. Traders Furniture Co.***, 401 P.2d 157 (Ariz. Ct. App. 1965); ***Page v. Scott***, 567 S.W.2d 101, 103 (Ark. 1978); ***Fire Ins. Exch. v. Hammond***, 99 Cal. Rptr. 2d 596, 600-01 (Cal. Ct. App. 2000); ***Cont'l Ins. Co. v. Kennerson***, 661 So. 2d 325 (Fla Dist. Ct. App. 1995); ***Bannock Bldg. Co. v. Sahlberg***, 887 P.2d 1052, 1056 (Idaho 1994); ***Dix Mut. Ins. Co. v. LaFramboise***, 597 N.E.2d 622, 625-26 (Ill. 1992); ***United Farm Bureau Mut. Ins. Co. v. Owen***, 660 N.E.2d 616 (Ind. Ct. App. 1996); ***Britton***, 817 S.W.2d at 445-47; ***Rausch v. Allstate Ins. Co.***, 882 A.2d 801, 814-15 (Md. 2005); ***Agra-By-Products, Inc. v. Agway, Inc.***, 347 N.W.2d 142, 149 (N.D. 1984); ***U.S. Fire Ins. Co. v. Phil-Mar Corp.***, 139 N.E.2d 330, 333 (Ohio 1956); ***Koch v. Spann***, 92 P.3d 146, 152 (Or. Ct. App. 2004);

***Remy v. Michael D's Carpet Outlets***, 571 A.2d 446, 452-53 (Pa. Super. Ct. 1990); ***56 Associates ex rel. Paolino v. Frieband***, 89 F. Supp. 2d 189, 194 (D.R.I. 2000) ("[I]t is reasonably clear that Rhode Island would not adopt the 'Sutton doctrine', and would instead look to the terms of the lease . . . ."); ***Union Mut. Fire Ins. Co. v. Joerg***, 824 A.2d 586, 590 (Vt. 2003); ***Monterey Corp. v. Hart***, 224 S.E.2d 142, 147 (Va. 1976).

The ***Sutton*** approach appears to be the "modern trend" favored by legal commentators. ***See, for example***, Williams, *Insurer's Rights of Subrogation, supra*. It has found favor in Tennessee courts. ***See Tate***, 745 F. Supp. at 473; ***Travelers Property Cas. Co. of Am. v. Terry***, No. M2005-02035-COA-R3-CV, 2007 WL 49558 (Tenn. Ct. App. Jan. 5, 2007) (stating in dicta that the ***Sutton*** rule, though inapplicable to the facts in the case, would have been followed); ***Allstate Ins. Co. v. Watson***, No. M2003-01574-COA-R3, 2005 WL 457846 (Tenn. Ct. App. Feb. 25, 2005), ***aff'd on other grounds***, 195 S.W.3d 609 (Tenn. 2006). Other jurisdictions following the ***Sutton*** approach include Alaska, Delaware, Maine, Michigan, Minnesota, Nebraska, New Hampshire, Oklahoma, Utah, and Washington. ***See Alaska Ins. Co. v. RCA Alaska Communications, Inc.***, 623 P.2d 1216, 1218 (Alaska 1981); ***Lexington Ins. Co. v. Raboin***, 712 A.2d 1011, 1016 (Del. Super. Ct. 1998); ***N. River Ins. Co. v. Snyder***, 804 A.2d 399, 403 (Me. 2002); ***N. H. Ins. Group v. Labombard***, 399 N.W.2d 527, 531 (Mich. Ct. App. 1986); ***United Fire & Cas. Co. v. Bruggeman***, 505 N.W.2d 87, 89-90 (Minn. Ct. App. 1993); ***Tri-Par Investments, LLC v. Sousa***, 680 N.W.2d 190, 199-200 (Neb. 2004); ***Cambridge Mut. Fire Ins. Co. v. Crete***, 846 A.2d 521, 523 (N.H. 2004); ***GNS P'ship v. Fullmer***, 873 P.2d 1157, 1163 (Utah Ct. App. 1994); ***Cascade Trailer Court v. Beeson***, 749 P.2d 761, 766 (Wash. Ct. App. 1988).

The Tennessee Court of Appeals' decision in ***Allstate Ins. Co. v. Watson, supra,*** was relied upon by the trial court below. In ***Allstate***, the plaintiff, Allstate Insurance Company, paid a fire loss to the landlord and then filed a lawsuit against the tenant, Watson, asserting subrogation rights under the landlord's fire insurance policy. The tenant's lease agreement with the landlord stated that the tenant was "responsible for all damages to the apartment, intentional or nonintentional." ***Allstate***, 2005 WL 457846, at *1. After a bench trial, the trial court found that the tenant was not negligent, but held nevertheless that the tenant was liable for the fire loss under the terms of the lease agreement. ***Id.*** Apparently permitting the insurance carrier to be subrogated to the rights of the landlord, the trial court awarded damages to the insurance carrier against the tenant. ***Id.*** The tenant appealed. The intermediate appellate court examined the issue of Allstate's right to subrogation and the status of Watson as an additional co-insured under the landlord's policy. The ***Allstate*** court noted in particular the "near encyclopedic treatment of decisions from other jurisdictions" on the issue in ***Tate v. Trialco Scrap, Inc.***, 745 F. Supp. 458, 467-73 (M.D. Tenn. 1989), and its conclusion that, if presented with the issue, Tennessee courts would adopt the ***Sutton*** approach. ***Allstate***, 2005 WL 457846, at *6. After analyzing at length the pertinent policy considerations, the intermediate appellate court in ***Allstate*** adopted the ***Sutton*** approach, holding: "absent an express agreement to the contrary in a lease, a tenant and his or her landlord are implied coinsureds under the landlord's fire insurance policy, and the landlord's liability insurer is precluded from bringing a subrogation action against the negligent tenant." ***Id.*** at *5 (citing ***Tri-Par Investments, LLC v. Sousa***, 268 Neb. 199, 680 N.W.2d 190, 198-99 (Neb. 2004)).

The intermediate appellate court's decision in ***Allstate*** was appealed to the Tennessee Supreme Court. The Supreme Court affirmed the Court of Appeals' decision to dismiss Allstate's complaint, but did so based on an ambiguity in the lease agreement, without addressing the issue of whether the tenant would be deemed an implied co-insured under the landlord's insurance policy. ***See Allstate Ins. Co. v. Watson***, 195 S.W.3d 609 (Tenn. 2006).[1]

In this case, Travelers asserts that, on appeal, the Tennessee Supreme Court in ***Allstate*** "declined to adopt the findings of the Court of Appeals with respect to the ***Sutton*** co-insured anti-subrogation rule." Pointing to the language in the Lease Agreement stating that Wintz is "responsible for liability that [Wintz] may incur as the result of a negligent act by [Wintz]," Travelers contends that subrogation should be allowed and it should be permitted to pursue recovery against Wintz. In response, Wintz argues that the Tennessee Supreme Court did not reach the issue of whether the landlord and tenant are co-insureds, and so "the holding and reasoning of the Court of Appeals remains intact." On this basis, Wintz urges affirmance of the trial court's grant of summary judgment in its favor.

To alleviate any uncertainty regarding the precedential value of this Court's opinion in ***Allstate*** in light of the Tennessee Supreme Court's decision on appeal, we look anew at the issue of whether to permit the landlord's insurance carrier to have a right of subrogation against a tenant to recover for damages to the leased premises resulting from the tenant's negligence. We examine the merits of each of the three approaches, the anti-Sutton approach, the case-by-case approach, and the Sutton approach.

Proponents of the anti-Sutton approach emphasize that a tenant has the responsibility to exercise ordinary care, and should not be exculpated from the consequences of his own negligence unless the landlord and the tenant have expressly agreed that the tenant will not be held liable for loss resulting from the tenant's negligence:

> [I]t is the duty of the tenant to exercise ordinary care, in the use of the leased premises or property, not to cause any material and permanent injury thereto over and above the ordinary wear and tear, and ... he is liable to the landlord in damages for any such injury unnecessarily resulting from his wrongful acts or his failure to exercise such care.

Williams, *Insurers' Rights of Subrogation*, ***supra*** at 558 (quoting C. R. McCorkle, Annotation, *Liability of Tenant for Damage to the Leased Property Due to His Acts or Neglect*, 10 A.L.R.2d

---

[1] The intermediate appellate court's opinion in ***Allstate*** was discussed at length in ***Travelers Prop. Cas. Co. of America v. Terry***, No. M2005-02035-COA-R3-CV, 2007 WL 49558 (Tenn. Ct. App. Jan. 5, 2007). In ***Travelers v. Terry***, the plaintiff insurance carrier insured a condominium complex; the insured was the owner of the building and the common area of the complex. The owner of one of the condominium units had leased his unit, and the tenant allegedly negligently started a fire. The insurance carrier sought to recover against the tenant of the condominium unit owner. ***Id.***, at *1. Because the defendant tenant did not have a contractual relationship with the insurance carrier's named insured, the ***Travelers*** court held that ***Allstate*** and the ***Sutton*** anti-subrogation rule were inapplicable. ***Id.*** at *1, *4.

1012, 1014 (1950)). Under this approach, subrogation is generally permitted. In one dissent, a proponent of this approach expresses disdain toward **Sutton**, stating that **Sutton**:

> . . . is laced with lofty preachments about natural justice and equity. Properly defined, of course, everyone agrees with natural justice and equity. As used in Sutton, however, such pronouncements are a dodge and an evasion of the real issue which is a fundamental tenet of common law. That is, that people should be responsible for their own negligence.

*Anderson v. Peters*, 491 N.E.2d 768, 772 (Ill. App. Ct. 1986) (Heiple, J., dissenting).

Under the second approach, the case-by-case approach, there is no presumption regarding whether the tenant is an implied co-insured under the landlord's insurance policy. Rather, the court looks at the lease as a whole, along with any other relevant evidence, to ascertain whether it was reasonably anticipated by the landlord and the tenant that the tenant would be liable to the landlord's insurance carrier, via subrogation, for any damages resulting from the tenant's negligence. Williams, *Insurers' Rights of Subrogation*, **supra** at 564. Courts adopting this approach note that it "avoid[s] per se rules and take[s] a more flexible case-by-case approach." *Union Mut. Fire Ins. Co. v. Joerg*, 824 A.2d 586, 591 (Vt. 2003). Courts also adopt this approach because:

> It avoids the court making assumptions and adopting fictions that are largely conjectural, if not patently illogical, and instead applies basic contract principles and gives proper credence to the equitable underpinning of the whole doctrine of subrogation.

*Rausch v. Allstate Ins. Co.*, 882 A.2d 801, 814-15 (Md. 2005). For example, courts utilizing this approach have denied subrogation where the lease requires the landlord to carry fire insurance on the leased premises. *Id.* at 803; *Union Mut. Fire Ins. Co.*, 824 A.2d at 591. In applying this middle approach, courts have also looked at the circumstances, recognizing the problems with permitting subrogation to tenants in a multi-unit leased structure:

> If the leased premises is a unit within a multi-unit structure, absent a clear, enforceable provision to the contrary, a court may properly conclude that the parties anticipated and reasonably expected that the landlord would have in place adequate fire insurance covering the entire building and, with respect to damage caused by the tenant's negligence to parts of the building beyond the leased premises, would look only to the policy, to the extent of its coverage, for compensation. That expectation has a rational and practical basis. Whatever general common law liability a tenant may have for damage to another person's property caused by the tenant's negligence, it is not likely, unless faced with a very clear contractual obligation to the contrary, that the tenant is thinking beyond the leased premises or, as a practical matter, would be able to afford, or possibly even obtain, sufficient liability insurance to protect against such an extended loss. Nor should the law encourage the economic waste

that would result from multiple layers of insurance by the individual tenants to cover the same loss.

***Rausch***, 882 A.2d at 816 (***quoted in*** Williams, *Insurers' Rights of Subrogation*, ***supra*** at 567). Commentators have noted that most courts applying this middle approach "ultimately decide that tenants do have co-insured status;" however, using such a case-by-case approach "fails to provide legal certainty, and as a result the parties cannot plan in advance to protect themselves." Williams, *Insurers' Rights of Subrogation*, ***supra*** at 564.

We must reject the anti-Sutton approach. Although it is consistent with the general principle that one should be liable for the consequences of one's negligence, we find that it is not consonant with the realities of residential leasing or expectations that would be reasonable for the parties. Moreover, it promotes economic waste by, in effect, requiring both the landlord and each tenant to obtain duplicate insurance on the tenant's leased premises and the entire building.

We must also reject the middle approach; its uncertainty allows neither the landlord nor the tenant to understand their respective insurance requirements and plan appropriately for catastrophic loss. Such a "case-by-case" approach would also likely result in more litigation when losses occur because resolution of liability depends heavily on a court's interpretation of the lease provisions. In the wake of such litigation, many residential tenants may be forced to settle with the landlord's insurance carrier rather than incurring substantial attorney's fees to defend a lawsuit. This dynamic does not serve equity.

We find persuasive the reasoning underlying the ***Sutton*** approach, namely, that "basic equity and fundamental justice" require that, absent an express agreement to the contrary, a tenant should be considered a co-insured under the landlord's property casualty insurance policy, and the insurance carrier should therefore be precluded from asserting subrogation rights against the tenant. In general, the ***Sutton*** approach has four virtues: (1) it corresponds with the reasonable expectations of the parties; (2) it is in accord with the commercial realities involved in insuring residential lease properties; (3) it comports with sound economic policy; and (4) it provides greater certainty of the law. ***See Allstate***, 2005 WL 457846, at *5; Williams, *Insurers' Rights of Subrogation*, ***supra*** at 580.

First, the ***Sutton*** approach comports with expectations of the parties that would be reasonable. In a residential lease agreement, the landlord conveys a non-freehold estate to the tenant. Therefore, a reasonable residential tenant, who has a mere possessory interest in a portion of the landlord's property, would likely expect his landlord to procure insurance on the entire rental property. Concomitantly, a reasonable residential landlord would not expect each of his tenants to independently purchase insurance to protect the entire building because the landlord has the greater insurable interests—the reversionary and fee interests. ***See*** Williams, *Insurers' Rights of Subrogation*, ***supra***, at 580. Conversely, as reflected in the Lease Agreement in this case, it is reasonable for the parties to expect the tenant to obtain renter's insurance on his personal property in the rental unit, rather than having the landlord bear responsibility for insuring against the loss of each tenant's personal belongings. ***Id.*** A reasonable insurer, which has adjusted its rates based on

the nature of the property and the knowledge that the landlord would rent apartment units to tenants, would expect to pay the landlord for damage caused by a fire negligently started by a tenant. *See Cambridge Mut. Fire Ins. Co.*, 846 A.2d at 523. Accordingly, as reflected in the *Sutton* approach, all parties involved would reasonably expect a residential tenant to be considered a co-insured under the landlord's insurance policy unless the parties had expressly agreed otherwise. *See Allstate*, 2005 WL 457846, at *4; *Tate*, 745 F. Supp. at 473; *Sutton*, 532 P.2d at 482.

Commercial reality also favors the *Sutton* approach. As stated succinctly in *Tate*:

> The realities of who ultimately pays for the insurance also support adoption of this rule. Despite the fact that the lessor may actually send the premium check to the insurance company, the lessee ultimately pays for insurance through his rent checks, because the lessor takes his own costs into account when setting rent. If the lessee is ultimately the source of the insurance payment, simple equity would suggest that he be able to benefit from that payment unless he has clearly bargained away that benefit.

*Tate*, 745 F. Supp. at 473. In this case, Travelers criticizes as "illogical" the assumption that proceeds from the tenants' rent are utilized by the landlord to pay insurance premiums, arguing that Wintz has offered no evidence that any of her rental payments were used to pay for insurance for the Building. This Court, however, is not required to check common sense at the courthouse door, and we decline to do so. We believe that "it is irrational to say that landlords do not consider the costs of insurance and other overhead operating costs in determining rent." Williams, *Insurers' Rights of Subrogation*, *supra* at 574. Moreover,

> Insurers insure leased premises, knowing that they are insuring investment or rental property. [Even knowing] that the insurer's own insured will most likely not be the perpetrator causing damages . . . they agree to insure the premises.
>
> * * *
>
> Finding an implied co-insured status does not result in an injustice to the insurer because the insurer's risk is not increased; the risk is the same one the insured agreed to cover.

*Id.* at 576. The commercial reality, then, is that the tenant makes the insurance premium payments even though the check paying the premium may actually come from the landlord. Moreover, that premium is calculated by the insurance carrier with the knowledge that the premises being insured is rental property. In light of this reality, equity would demand that a residential tenant be considered an implied co-insured under his landlord's insurance policy unless the landlord and the tenant have agreed otherwise.

Important economic efficiencies also underlie the *Sutton* approach. As noted in *Allstate*, "the *Sutton* rule . . . prevent[s] the economic waste that w[ould] undoubtedly occur if each tenant in a multiunit dwelling or multiunit rental complex [were] required to insure the entire building against

-10-

his or her own negligence." ***Allstate***, 2005 WL 457846, at *5 (quoting ***Tri-Par***, 680 N.W.2d at 198-99). The "strong public policy against economic waste" militates against permitting subrogation. ***DiLullo v. Joseph***, 792 A.2d 819, 821 (Conn. 2002) (***quoted in*** Williams, *Insurers' Rights of Subrogation*, ***supra*** at 585). Under both the anti-Sutton approach and the case-by-case approach, each tenant in a multi-unit premises such as the Building in this case could potentially be held liable for fire or other damage to the entire Building, and thus would be required to purchase fire insurance for the entire Building. Consequently, "the same property would be insured many times over. While this may provide insurance companies a welcome windfall, it would be contrary to economic logic and common sense." ***United Fire & Cas. Co. v. Bruggeman***, 505 N.W.2d 87, 89 (Minn. Ct. App. 1993).

Finally, as a policy issue, the ***Sutton*** approach promotes certainty with respect to lease agreements:

> [T]he ***Sutton*** rule prevents landlords from engaging in gamesmanship when drafting leases by providing the necessary incentive for them, if they so desire, to place express subrogation provisions in their leases. If such a provision is placed in their lease, tenants will be on notice that they need to purchase liability insurance. If such a provision is not included in their lease, insurers will pass the increased risk along to landlords in the form of higher premiums, and landlords, in turn, will pass along the higher premiums to tenants in the form of increased rent.

***Allstate***, 2005 WL 457846, at *5. Under the anti-Sutton approach, the burden of negotiating a lease provision on the allocation of risk falls on the tenant, the party least likely to be aware of the status of the law and the parties' respective responsibilities.[2] Under the case-by-case approach, the resolution of the issue can vary depending on the particular facts; the resulting uncertainty leaves the parties less able to protect against potential liability. The Sutton approach puts the burden of negotiating an express agreement on the parties in the best position to do so, namely, the landlord and the insurance carrier. It promotes legal certainty, giving all parties the opportunity to plan in advance against liabilities. ***See generally***, Williams, *Insurers' Rights of Subrogation*, ***supra*** at 588-89, 595-96.

Based on these considerations, like the ***Allstate*** court, we are persuaded that, of the three identified approaches, the ***Sutton*** approach is the most equitable and consonant with public policy.

---

[2]The difficulty of the anti-Sutton approach, becomes more apparent in more informal lease arrangements, short-term or at-will tenancies, or situations in which the landlord agrees to accept services instead of rent. These are the most likely type to be oral arrangements, with little or no negotiation of terms such as responsibility for insurance. In addition, such tenants are the least likely to be able to afford liability insurance for the landlord's entire building and the least likely to have assets to pay for a catastrophic loss. In contrast, long-term tenants or commercial tenants, who would be more likely to be able to afford liability insurance for the lease premises, would more likely be in a position to negotiate meaningfully with the landlord about their respective responsibilities as to insurance and fire loss. ***See generally***, Williams, *Insurers' Rights of Subrogation*, ***supra*** at 581-82.

Therefore, we hold that, in the absence of an express agreement to the contrary, Wintz must be deemed an implied co-insured under Dattel's insurance policy with Travelers. Under these circumstances, subrogation would not be permitted and the trial court did not err in granting summary judgment in favor of Wintz.

The decision of the trial court is affirmed. Costs are taxed to Appellants, Dattel Family Limited Partnership and Travelers Property Casualty Company of America, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE